UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAM INENDINO, | |
| Plaintiff, | No. 22 C 04982 |
| v. | Judge Thomas M. Durkin |
| LORI LIGHTFOOT, ANNETTE NANCE-HOLT, AND CITY OF CHICAGO, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sam Inendino ("Inendino") alleges that Chicago Mayor Lori Lightfoot, Chicago fire commissioner Annette Nance-Holt, and the City of Chicago (collectively, "Defendants") violated his First Amendment rights when he was terminated from his position with the Chicago Fire Department ("CFD") for statements he made on his private Facebook page. Defendants now move to dismiss. R. 12, 13, 17. For the following reasons, the Court grants Lightfoot's motion to dismiss Count I against her, grants the City's motion in part and denies it in part, and denies Nance-Holt's motion in full.

**LEGAL STANDARD**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

1

This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## BACKGROUND

Inendino was employed as a Chicago firefighter and EMT beginning in May 2005. R. 1 at ¶¶ 7–8. He served as a firefighter with Engine 54 and Truck 20 in the Englewood neighborhood of Chicago without incident for sixteen years until he was terminated on June 8, 2021. *Id.* ¶¶ 8, 14, 18. Inendino was well-respected within his workplace, acted as the cook in the firehouse, and never had any complaints against him by the public until the incidents at issue. *Id.* ¶¶ 19–22.

On June 8, 2021, Inendino was fired for speech he engaged in on his personal Facebook account. *Id.* ¶ 15. The Facebook activity that led to his termination was

compiled in an OIG report.[1] *Id.* ¶ 24. The OIG report noted that Inendino's Facebook profile stated he was a "Firefighter at Chicago Fire Department" and was publicly available to any Facebook user. R. 12-2 at 4. His profile photos in 2019 and 2020 depicted him and his minor son wearing firefighter paraphernalia and sitting in front of a fire truck. *Id.* In October 2019, Inendino commented on a Hispanic person's post which complained about the poster's brother's treatment by a Chicago Police Department lieutenant. *Id.* at 5. After some back and forth, Inendino stated, "Your comments are all weak… can't talk I have to go to work to pay for all your scumbag kids that you welfare fucks keep having," and "[ . . .] that's a good come back… NOT get all HOOD on me YO… take your ass back over the border where ya belong… gotta

---

[1] A Rule 12(b)(6) motion "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Tobey*, 890 F.3d at 648 (citing Fed. R. Civ. P. 10(c)). The exception for documents referenced in and central to a complaint is a "narrow" one, "aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). The portions of the OIG report which Defendants attach to their motion falls within this narrow exception. Inendino references the OIG report in his Complaint (*see* R. 1 ¶ 24), and it is central to Inendino's claims because it led to his termination—which forms the basis of his First Amendment claim. The Court further takes judicial notice of the filings in Inendino's union case, *Firefighters Union Local #2 v. City of Chi.*, case no. 22 CH 7782 (Cir. Ct. Cook Cnty.), which are a matter of public record and include the same report. *Pierce v. Ill. Dep't of Human Servs.*, 128 Fed. App'x 534, 535 (7th Cir. 2005) (finding no error where the district court, in deciding a motion to dismiss, considered documents outside the pleadings "from the administrative process" because they were "public records"); *see also Flores v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 948 (N.D. Ill. 2015) (considering IDHR charge as central to the complaint in an ADA case); *Whitehead v. AM Int'l, Inc.*, 860 F. Supp. 1280, 1286 n.5 (N.D. Ill. 1994) ("To determine the proper scope of Whitehead's Title VII complaint, however, the court must consider the accusations made in the EEOC charge.").

3

go I have a real job." *Id.* The OIG received two complaints from members of the public regarding these comments. R. 1 ¶ 21 n.1.

Inendino's other Facebook posts contained in the OIG report contain a mix of fairly inflammatory politically and racially charged memes, including criticisms and personal attacks of Lightfoot like, "you could take one out of the ghetto but can't take the ghetto out of them… what a dirty hoodrat she is," "hope she chokes on something," and "fluent in ghetto." R. 12-2 at 11–13.[2] He also posted a petition to recall Lightfoot. R. 1 ¶ 24–25. According to Inendino, this speech did not cause a disruption at his workplace, nor was there any evidence that it was likely to cause a disruption. *Id.* ¶¶ 23, 29. For the arbitration hearing on his termination, his coworkers wrote many letters extoling his bravery, character, and selflessness and argued he should not have been terminated. *Id.* ¶ 22a–v.

On September 14, 2022, Inendino filed a three-count Complaint against Defendants under 42 U.S.C. § 1983, alleging that his termination was in retaliation for the exercise of his First Amendment right to free speech. *See id.* Inendino alleges that the true reason he was terminated was because his Facebook activity included

---

[2] Other examples contained in the OIG report include an image of pregnant black women, captioned, "the real housewives of public housing," R. 12-2 at 6; various memes about black-on-black crime statistics, *id.* 6-8; posts supporting a shooting at a protest in Kenosha, Wisconsin (including captions like, "Good for him should aim for the torso!!!"), *id.* at 9-10; comments about wanting to leave Chicago because of crime and protests, *id.* at 11; comments calling looters "animals" and implying they receive government aid, *id.* at 7; memes discussing why the shooting of Breonna Taylor was justified, *id.*; a post making fun of an Asian-American White House correspondent's accent, *id.* at 13; and a cartoon image of a truck running over stick figures with the caption, "All Lives Splatter. Nobody Cares About Your Protest. Keep Your Ass Out of the Road," *id.* at 8.

criticisms of Lightfoot and a petition to recall her. *Id.* ¶¶ 24–25. As proof, he points to the fact that, at the grievance arbitration prior to his termination, the City's lawyer directly questioned him about the petition to recall Lightfoot and his various criticisms of her posted on his Facebook page.[3] *Id.*; R. 22-3. Inendino further alleges that Lightfoot was personally involved in the decision to terminate him. R. 1 ¶ 30. In his reply brief, he points to the testimony of the Labor Relations Commissioner at Inendino's arbitration that the Commissioner recommended to Nance-Holt that Inendino not be terminated, and that Nance-Holt agreed that Inendino did not deserve termination. R. 22-2 at 163–64.[4]

Inendino sues Lightfoot and Nance-Holt in their individual capacities. He also brings a *Monell* claim against the City of Chicago ("the City"), alleging that Lightfoot was the final policymaker for the City as to the hiring and firing of firefighters, and that he was terminated pursuant to the City's policy which prohibits employees from "posting on social media any content . . . that can be deemed offensive, a personal

---

[3] To his reply brief, Inendino attaches portions of the transcript of his administrative hearing. "[A] party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

[4] The Court will not consider the portion of the City of Chicago Personnel Rules which Defendants attach to their brief. Though relevant, they are neither "critical to the complaint" nor "referred to in it." *Tobey*, 890 F.3d at 648. And "notwithstanding their availability on the Internet, the personnel rules are not the sort of 'public record' of which courts typically take judicial notice. They are not 'generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot reasonably be questioned.'" *Curry v. City of Chicago*, No. 10-CV-7153, 2013 WL 884454, at *2 (N.D. Ill. Mar. 8, 2013) (quoting *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997)) (refusing to consider the City of Chicago's Personnel Rules on a motion to dismiss).

attack or a violation of an established internal policy, rule or law." R. 1 ¶ 49. That policy further provides examples of prohibited communications which "are deemed by CFD to offend persons based on race, ethnic heritage, national origin, sex, sexual orientation, age, physical or mental illness or disability, marital status, employment status, housing status, religion . . ." *Id.*

## DISCUSSION

### I. Whether Inendino Adequately Alleges Lightfoot's Personal Involvement in Count I

First, Lightfoot's motion to dismiss Count I against her can be easily granted because Inendino fails to adequately allege Lightfoot's personal involvement in his termination. To state a claim against a government official in her individual capacity, a plaintiff must plead that "through the official's own individual actions, [she] has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("Individual liability under § 1983 requires 'personal involvement in the alleged constitutional deprivation'" (quoting *Minix v. Canrecci*, 597 F.3d 824, 833 (7th Cir. 2010))). There is no *respondeat superior* liability for § 1983 actions, so a government official is only "liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. The official must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

Inendino's claim regarding Lightfoot's personal involvement in his termination is nothing more than a threadbare recital of the elements of a cause of action, devoid of factual support. *Twombly*, 550 U.S. at 555. He merely states that "Mayor Lightfoot

6

was personally involved in the decision to terminate" him, R. 1 ¶ 30, but he alleges no facts that Lightfoot personally knew about and facilitated his termination or turned a blind eye to it. Though he refers in his reply brief to the fact that he was questioned about his criticisms of Lightfoot during his grievance hearing, and that Nance-Holt originally stated she did not think he deserved termination, these facts do not support a reasonable inference that Lightfoot was personally involved in the termination of a lower-level fireman. This is especially true because the Municipal Code of Chicago limits the Mayor's oversight for discipline of employees to "officers of the city" and those "exempt from the . . . civil service act." Municipal Code of Chicago § 2-4-020. Inendino does not allege that he was either a city officer or exempt from the civil service act. Because Inendino's allegations of Lightfoot's personal involvement in his termination are pure speculation contradicted by the Municipal Code, Lightfoot's motion to dismiss is granted as to the single count against her.

> **II. Whether Inendino Sufficiently Alleges that He Engaged in Constitutionally Protected Speech**

The Court turns now to the City's and Nance-Holt's remaining arguments. First, they argue that Inendino fails to allege he engaged in protected speech. In order to state a claim of a First Amendment violation on the basis of retaliation, Inendino must allege that the activity for which he suffered an adverse action was protected under the First Amendment. *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021). A public employee's speech is only protected by the First Amendment if: "(1) he spoke as a private citizen rather than in his capacity as a public employee; (2) he spoke on a matter of public concern; and (3) his interest in expressing the speech is

7

'not outweighed by the state's interests as an employer in promoting effective and efficient public service.'" *Lett v. City of Chicago*, 946 F.3d 398, 401 (7th Cir. 2020) (quoting *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013)). As to the third factor, the Supreme Court has provided courts with a balancing test in *Connick v. Myers*, 461 U.S. 138 (1983) and *Pickering v. Bd. Of Educ.*, 391 U.S. 563 (1968). *Pickering* balancing, as it is called, includes the consideration of a number of factors to weigh the public employee's interests in free speech under the First Amendment against the state's interests. *Id.*

For the purposes of their motions, Defendants concede that Inendino spoke as a private citizen on his Facebook page (even though he presented as a member of CFD when he did so) and that some of his posts could be viewed as touching on matters of public concern. Defendants thus argue that Inendino's claims fail on the third factor because the City's interests in "maintaining the public's trust and confidence in the City's ability to serve its residents in an equitable and respectful manner and in promoting effective and efficient public service outweigh Inendino's interest in posting racist, violent and dehumanizing invective on social media." R. 12 at 8.

The Seventh Circuit, however, has advised courts that the relative balancing of the state's interests against the employee's interests should not be decided at the pleading stage because it is "preferable to leave to the defendant the burden of raising justification as an affirmative defense." *Gustafson v. Jones*, 117 F.3d 1015, 1019 (7th Cir. 1997); *Glass v. Dachel*, 2 F.3d 733, 744 (7th Cir. 1993) (explaining that the state bears the burden of demonstrating an interest which outweighs the employee's

8

interest in speaking). Though Defendants' briefs include arguments regarding their interests in terminating Inendino's employment, and the Court does take notice of Inendino's racially-charged Facebook posts, the Court cannot consider the City's purported interests in limiting that speech on a motion to dismiss because the City's interests are an affirmative defense and appear nowhere on the face of the Complaint or in the OIG report. *Ontario Ltd. v. Zurich Cap. Markets, Inc.*, 249 F. Supp. 2d 974, 985 (N.D. Ill. 2003) ("Defendants can bring a motion to dismiss on the basis of an affirmative defense only if that affirmative defense appears on the face of the complaint."); *Arnold v. Janssen Pharmaceutica, Inc.*, 215 F. Supp. 2d 951, 956–57 (N.D. Ill. 2002) (a plaintiff "need not anticipate or plead around affirmative defenses"). Therefore, and because the *Pickering* balancing test is highly fact-dependent, its application "will be possible only after the parties have had an opportunity to conduct some discovery." *Gustafson*, 117 F.3d at 1019; *see also Redd v. Dougherty*, 578 F. Supp. 2d 1042, 1052 (N.D. Ill. 2008) (refusing to conduct *Pickering* balancing test at the motion to dismiss stage). Here, further discovery must occur on the impact of Inendino's speech, its effect on Inendino's job, the City's interests in limiting the speech, and Inendino's allegations that he was actually terminated for his criticisms of Lightfoot, and not his other posts. The City's and Nance-Holt's motions to dismiss on this basis are denied.

### III. Whether Qualified Immunity Bars Inendino's Claims Against Nance-Holt in Count II.

Nance-Holt next argues that Inendino's claims against her in her individual capacity in Count II must be dismissed on the basis of qualified immunity. "Qualified

9

immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). For a right to be "clearly established," the "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Though qualified immunity should be determined at the "earliest possible stage," *Reed v. Palmer*, 906 F.3d 540, 549 (7th Cir. 2018), dismissal under Rule 12(b)(6) based on qualified immunity is appropriate only when the plaintiff's well-pleaded allegations, taken as true, do not "state a claim of violation of clearly established law." *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (internal quotations omitted).

For the same reason that the Court cannot conduct the *Pickering* analysis, it cannot determine, at this early stage, the existence of qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 238–39 (2009) ("When qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify."). Before determining whether a right is clearly established, the Court must first determine whether the official violated a constitutional right. *Spiegla v. Hull*, 371 F.3d 928, 940 (7th Cir. 2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). It is difficult to decide the question of qualified immunity prior to conducting the *Pickering* analysis. *Spiegla*, 371 F.3d at 940 ("[B]ecause [the] *Pickering* analysis is essential to the determination of whether a constitutional violation occurred, [the Court] cannot [] reach the issue of qualified immunity" on a motion to dismiss.).

10

The Court's declining to decide the issue of qualified immunity at this stage in the litigation does "not preclude [the defendants] . . . at the summary judgment stage from introducing evidence that might reveal a justification for their situation that would support a finding of immunity, but . . . they are not entitled to a finding on the pleadings that they enjoy qualified immunity from suit." *Gustafson*, 117 F.3d at 1021 (denying motion to dismiss First Amendment retaliation claims based on qualified immunity). Nance-Holt's motion to dismiss on the basis of qualified immunity is denied.

## IV. Whether Inendino Stated a *Monell* Claim in Count III

Finally, the City argues that Inendino fails to state a claim for municipal liability under *Monell* in Count III. A municipality may be liable for damages under § 1983 only if the constitutional violation was caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978)). The Complaint alleges that the City is liable for violating Inendino's First Amendment rights under an official policy theory and an official with final policy-making authority theory.

### A. Act of a Person with Final Policymaking Authority

First, the Complaint predicates *Monell* liability on the fact that "Lightfoot was the final policymaker for the City with regard to the employment of firefighters (and

11

she made the decision to terminate Inendino)." R. 1 ¶ 49a. "State or local law determines whether a person has policymaking authority for purposes of § 1983." *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009). The Municipal Code of Chicago contradicts Inendino's claim that the mayor has any policy-making authority as to the discipline or termination of firefighters. *See* Municipal Code of Chicago § 2-74-050 ('The commissioner of human resources shall issue human resources rules. . . . The rules shall provide: . . . for the establishment of disciplinary measures such as suspension, demotion in rank or grade, or discharge."); *id.* § 2-4-020 (limiting the mayor's supervision and punishment of City employees to city officers and those exempt from the civil service act). This claim also fails for the same reason that the individual claim against Lightfoot failed: Inendino has not adequately alleged Lightfoot's personal involvement in his termination. He therefore has not alleged that any final policymaker was involved in the constitutional deprivation at issue. *Hankle-Sample v. City of Chicago*, No. 20-CV-1997, 2021 WL 4461557, at *13 (N.D. Ill. Sept. 29, 2021) (dismissing *Monell* claim because "[n]one of the individual agents named in the [complaint] are final policymakers"). The *Monell* claim based on the act of a final policymaker is dismissed and must be stricken from Count III (¶ 49a).

### B. Official Policy

But Inendino's "official policy" *Monell* claim survives the City's motion to dismiss. There are two types of such "official policy" claims: first, when a policy "explicitly violates a constitutional right when enforced," and second, when there are "omissions in the policy" that cause a constitutional violation. *Calhoun v. Ramsey*,

308 F.3d 375, 379-80 (7th Cir. 2005). To prevail on the first type, the "[p]laintiff must identify specific language in the policy that explicitly violates a person's constitutional rights." *Alcorn v. City of Chicago*, No. 17 C 5859, 2018 WL 3614010, at *15 (N.D. Ill. July 27, 2018) (citing *Calhoun*, 308 F.3d at 381). "Under this type of claim, one application of the offensive policy resulting in a constitutional violation is sufficient to establish municipal liability." *Calhoun*, 308 F.3d at 379–80 (citing *City of Okla. v. Tuttle*, 471 U.S. 808, 822 (1985)). The second type of official policy claim which focuses on omissions, however, "require[s] more evidence than a single incident to establish liability." *Calhoun*, 308 F.3d at 380.

The City focuses its argument on the second type and argues that Inendino's claim fails because he does not point to any constitutional violations other than his own. Though Inendino did not address the City's argument on this point, his Complaint is clearly not making out a claim based on an omission in policy. Rather, Inendino alleges he "was terminated pursuant to official City policy." R. 1 ¶ 49b. He points to explicit language in the policy prohibiting social media posts that "can be deemed offensive, a personal attack or a violation of an established internal policy, rule or law." *Id.* He further alleges that "'posting on social media' is speech" (*id.* ¶ 49b n.3), and therefore reasonably implies that the enforcement of this policy explicitly violates employees' First Amendment right to the freedom of speech when enforced. Because he alleges the first type of official policy claim, he need not point to any other examples of constitutional violations; "one application . . . resulting in a constitutional

13

violation is sufficient." *Id.* at 379–80. Therefore, the City's motion to dismiss Inendino's official policy *Monell* claim in ¶ 49b of the Complaint is denied.

## CONCLUSION

For the foregoing reasons, Lightfoot's motion to dismiss (R. 12) is granted. Apart from the final policymaker *Monell* claim in ¶ 49a of Count III, which is stricken, the City's motion to dismiss (R. 17) is denied. Finally, Nance-Holt's motion to dismiss (R. 13) is denied in full.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: March 3, 2023