IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAM INENDINO, | ) |
|     Plaintiff, | ) |
| vs. | ) Case No. 22 C 4982 |
| ANNETTE NANCE-HOLT, BRIAN CASEY, and THE CITY OF CHICAGO, | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Sam Inendino alleges that Annette Nance-Holt, Brian Casey, and the City of Chicago violated his First Amendment rights when he was terminated from the Chicago Fire Department (CFD) for offensive public statements he made on Facebook. The parties have filed cross-motions for summary judgment. For the following reasons, the Court grants summary judgment in favor of defendants Nance-Holt, Casey, and the City of Chicago.

## Background

The following facts are undisputed for purposes of the cross-motions for summary judgment unless otherwise noted. Inendino was a firefighter and an emergency medical technician (EMT) with the CFD from May 2005 to June 2021. Inendino frequently interacted with the general public and primarily worked out of Engine 54 located in Englewood, a predominantly African-American neighborhood.

Firefighters with Engine 54 are subject to City of Chicago and CFD rules and

policies that dictate how they must conduct themselves while on and off duty. For example, a CFD employee may not engage in "[d]iscourteous treatment, including verbal abuse, of any . . . member of the public." Def. City of Chicago's L.R. 56.1 Stmt. ¶ 66. An employee's "[p]ersonal conduct off duty which reflects upon the Department, Unit or position must be such as will promote the confidence of the public and the representative integrity of the department." *Id.* ¶ 67. CFD employees are prohibited from posting on social media any content that is "deemed by CFD to offend persons based on race, ethnic heritage, national origin . . . or other characteristic that may be protected by applicable civil rights laws." *Id.* ¶ 68. Similarly, CFD employees are prohibited from posting on social media any content deemed by the "CFD to be malicious, obscene, threatening or intimidating, . . . or that might constitute harassment or bullying." *Id.*

At all relevant times, Inendino maintained a public Facebook profile page, and any member of the public could view his Facebook content. Inendino expressly identified himself on his profile as a CFD firefighter, and his profile picture showed him and his son wearing Chicago firefighter paraphernalia while sitting on the back of a fire truck. Inendino's profile photo was visible to anyone who visited his Facebook page and appeared next to every comment or post he made on Facebook.

In October 2019, the Chicago Office of Inspector General (OIG) received two complaints from members of the public concerning inappropriate and offensive comments Inendino made on someone else's Facebook post.[1] The Facebook post

---

[1] The Court overrules Inendino's objections to the admissibility of the OIG report and statements cited within the report. As a public record whose trustworthiness has not been credibly refuted, the OIG report is admissible under Federal Rules of Evidence

2

concerned the alleged mistreatment of the Facebook user's brother by a Chicago police officer. Following an exchange on the post between Inendino and others, Inendino commented, "Your comments are all weak. . . can't talk I have to go to work to pay for all your scumbag kids that you welfare fucks keep having!!!" *Id.* ¶ 25. Inendino further commented, "NOT get all HOOD on me YO. . . take your ass back over the border where ya belong. . . gotta go I have a real job." *Id.* ¶ 26.

OIG investigated the complaints and discovered multiple Facebook posts and comments from Inendino in 2020 that highlighted race, used derogatory terms towards minorities, and "seemingly advocat[ed] violence against protestors." Def. City of Chicago's Cross-Mot. for Summ. J., Ex. 1 (OIG Report) at 8. For instance, Inendino posted an image from a Black Lives Matter protest at which Kyle Rittenhouse killed two men and wrote as a caption, "Good for him should aim for the torso!!!" Def. City of Chicago's L.R. 56.1 Stmt. ¶ 46. Inendino also posted a photograph of Mayor Lori Lightfoot in a restaurant with the caption, "Hope she chokes on something." OIG Report at 25. Inendino posted a meme depicting a car running over pedestrians with the caption, "All Lives Splatter." Def. City of Chicago's L.R. 56.1 Stmt. ¶ 42. He commented "Love it" on a post of an image of a protester who appears to have been shot. *Id.* ¶ 45. Inendino posted an image of a gun being pointed at an African-American man's head with the caption, "If black lives really mattered they'd stop shooting each other" and "94 percent of all blacks shot are shot by blacks." *Id.* ¶ 41. Inendino posted a meme of four pregnant African-American women with the caption,

---

803(8). The statements referenced in the report are likewise admissible: statements by Inendino are not hearsay, and statements made by complainants are not being offered to prove the truth of the matters asserted in the statements.

3

"Real Housewives of Public Housing." *Id.* ¶ 37. Inendino posted a photograph of four individuals, primarily African-Americans, entering a store through a broken window with the caption, "Looting[:] When free housing, free food, free education, and free phones just aren[']t enough." *Id.* ¶ 48. Inendino commented on an image referencing the shooting of Breonna Taylor, her boyfriend Kenneth Walker, and the Black Lives Matter movement: "Just another reason for the animals to go get some free shit." *Id.* ¶ 39. Inendino posted a meme with an image of Michelle Obama with the caption, "Fluent in Ghetto." OIG Report at 16. He posted a video of Mayor Lightfoot and wrote, "Like I said you could take one out of the ghetto but can't take the ghetto out of them . . . what a dirty hoodrat she is." Def. City of Chicago's L.R. 56.1 Stmt. ¶ 50. And Inendino posted a photo of Weija Jiang, an Asian reporter, and wrote the caption, "Haaa . . . Wang Chung no answers prez back!!" *Id.* ¶ 52.

OIG concluded that Inendino violated the above-referenced City and CFD personnel rules and recommended his termination. OIG stated in its report:

> The City has an interest in ensuring trust in its services by its citizens. Inendino's racist and offensive Facebook posts show a contempt for the residents of the community he serves. Any minority resident of the City, who was exposed to the content on Inendino's public Facebook page, could reasonably question whether he would deliver the appropriate level of care were they to need his services as an EMT.

*Id.* ¶ 55. On June 9, 2021, Inendino was terminated from the CFD and placed on the City's no rehire list.

On September 14, 2022, Inendino filed this lawsuit asserting claims under 42 U.S.C. § 1983 against the City of Chicago, Fire Commissioner Nance-Holt, and CFD Assistant Commissioner of Labor Relations Casey for violation of the First Amendment. All parties have moved for summary judgment.

4

Discussion

A party is entitled to summary judgment only if it demonstrates that "there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On cross-motions for summary judgment, the Court draws inferences "in favor of the party against whom the motion under consideration is made." *Cremation Soc'y of Ill., Inc. v. Int'l Bhd. of Teamsters Local 727*, 869 F.3d 610, 616 (7th Cir. 2017) (internal quotation marks omitted).

**A.    First Amendment claim**

"To make out a *prima facie* claim for a violation of First Amendment rights, public employees must present evidence that (1) their speech was constitutionally protected; (2) they suffered a deprivation likely to deter free speech; and (3) their speech was at least a motivating factor in the employer's actions." *Bless v. Cook Cnty. Sheriff's Office*, 9 F.4th 565, 571 (7th Cir. 2021) (internal quotation marks omitted).

The defendants do not dispute that Inendino can satisfy the second and third elements of this claim—the CFD terminated Inendino's employment due to his Facebook posts. They contend, however, that Inendino's speech is not constitutionally protected.

**1.    Constitutionally protected speech**

"Whether a public employee's speech is constitutionally protected is a question of law, even though it may require predicate factual determinations." *Harnishfeger v.*

5

*United States*, 943 F.3d 1105, 1113 (7th Cir. 2019) (internal quotation marks and alterations omitted). To determine whether the First Amendment protects a public employee's speech, a court must ask whether the employee's interests in making the speech outweigh the government's interest in "promoting the efficiency of the public services it performs through its employees." *Hicks v. Illinois Dep't of Corrs.*, 109 F.4th 895, 900 (7th Cir. 2024) (internal quotation marks omitted).

A court engages in this inquiry, known as *Pickering* balancing, once a public employee establishes either of the following: (1) she spoke as a private citizen on a matter of public concern, or (2) her speech addressed the public, was neither made at work nor about work, and she did not take deliberate steps to link her speech with her employer. *Id.* at 900–01. The first path applies to "*post hoc* analyses of isolated disciplinary actions taken in response to actual speech"; the second path applies to "*ex ante* blanket restrictions on speech." *Id.* at 901 (internal quotation marks and alterations omitted).

Contrary to Inendino's position, the second path to *Pickering* balancing is inapplicable in this instance. It is undisputed that Inendino was terminated after an investigation into his speech on Facebook. In other words, he was not subject to any blanket restriction on speech. Moreover, Inendino would not get to *Pickering* balancing even if the second path were available to him. Like the plaintiff in *Hicks*, Inendino took deliberate steps to link himself and his speech with his employer through his decision to "include his occupation and a photo of himself in Department uniform on his publicly accessible Facebook page." *Id.* Even more, Inendino alluded to the importance of his occupation to bolster his antagonistic comments to members of the public, saying, "take

6

your ass back over the border where ya belong. . . gotta go I have a real job." Def. City of Chicago's L.R. 56.1 Stmt. ¶ 26. This comment that appeared alongside Inendino's profile picture in which he is adorned in CFD paraphernalia. A "speaker-employee cannot deliberately trade on her public employment while claiming the speech is entirely unrelated." *Harnishfeger*, 943 F.3d at 1115.

### a. Matter of public concern

Regarding the first path to *Pickering* balancing, the parties agree the only operative question is whether Inendino spoke on a matter of public concern. "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (internal citations and quotation marks omitted). "Conversely, speech is not a matter of public concern if it involves a personal grievance of interest only to the employee." *Gazarkiewicz v. Town of Kingsford Heights*, 359 F.3d 933, 941 (7th Cir. 2004) (internal quotation marks omitted).

Inendino contends he was speaking on matters of public concern, specifically, about "public housing, the leaders of Chicago, police shootings, political movements, protests, shootings, looting, Mayor Lori Lightfoot, federal law enforcement being deployed in Chicago, first ladies, and reporters." Pl.'s Reply in Supp. of Mot. for Summ. J. at 2–3. However, "[w]hether an employee's speech implicates a matter of public concern is a question of law that must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Craig v. Rich Twp. High Sch.*

7

*Dist. 227*, 736 F.3d 1110, 1115–16 (7th Cir. 2013) (internal quotation marks omitted).

The Court is skeptical that Inendino's speech offers any value to society or to the public at large on any topic. Indeed, the Court is hard-pressed to find the value from the comment "aim for the torso!!!" regarding a video from a shooting that left two men dead. Def. City of Chicago's L.R. 56.1 Stmt. ¶ 46. And it is difficult to see how a photograph of Mayor Lightfoot in a restaurant with the caption, "[h]ope she chokes on something," concerns anyone other than Inendino and his personal grievances. OIG Report at 25.

Though one might think at first glance that Inendino's speech appears to be indirectly related to a legitimate news interest or public concern, the content of his speech indicates otherwise. For example, some of his comments involved public figures. But the content of his speech makes no contribution to the public discourse on any news interest or concern. A meme of a car running over pedestrians with the caption, "All Lives Splatter," says nothing about the Black Lives Matters movement or its opposition. Def. City of Chicago's L.R. 56.1 Stmt. ¶ 42. At best the meme qualifies as offensive, tasteless humor, and at worst it qualifies as a call for violence. Similarly, a meme of four pregnant African-American women with the caption, "Real Housewives of Public Housing" cannot reasonably be viewed as a critique of public housing or a comment on public assistance. Rather it is speech aimed at disparaging a minority group. *Id.* ¶ 37.

Still, courts have found offensive speech may relate to a matter of public concern if it touches on a political issue, even if only lightly. "The inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Rankin v. McPherson*, 483 U.S. 378, 387 (1987). Thus courts have

8

found that statements including, "God Hates Fags," and "[t]he most common name for a convicted gang rapist in England is . . . Muhammad," relate to matters of public concern despite the fact that they degrade minority groups based on their sexuality and religion. *See*, *e.g.*, *Snyder*, 562 U.S. at 454; *Hernandez v. City of Phoenix*, 43 F.4th 966, 973 (9th Cir. 2022).

But even if Inendino's speech relates to matters of public concern, "[a]n employer does not necessarily violate the First Amendment by discharging an employee that speaks out on a matter of public concern." *Craig*, 736 F.3d at 1118. Rather, an employer violates the First Amendment only if its interests are outweighed by the employee's interests in making the speech. The Court therefore proceeds to the *Pickering* balancing analysis.

### b. *Pickering* balancing

*Pickering* balancing requires a court to conduct a fact-specific inquiry considering several interrelated factors:

> (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place and manner of the speech; (5) the context in which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decisionmaking; and (7) whether the speaker should be regarded as a member of the general public.

*Hicks*, 109 F.4th at 901. One factor of "great weight may offset several which lean slightly in the other direction." *Id.* (internal quotation marks omitted). And a court "need not address each factor in each case." *Harnishfeger*, 943 F.3d at 1115.

Contrary to Inendino's suggestions otherwise, *Pickering* balancing is a question of law, not a question of fact for a jury. *See Sullivan v. Ramirez*, 360 F.3d 692, 701 (7th

9

Cir. 2004) (finding the district court erred in failing to determine whether employees' "speech was constitutionally protected under *Pickering*"). *See also, e.g., Williams v. Seniff*, 342 F.3d 774, 782 (7th Cir. 2003); *Wainscott v. Henry*, 315 F.3d 844, 851 (7th Cir. 2003) ("The proper balance of these competing interests is a question of law."). Still, a public employer bears the burden of showing that the *Pickering* "balance weighs in its favor." *Harnishfeger*, 943 F.3d at 1115.

Defendants argue their interests in promoting the efficient performance of CFD services without disruption outweighs any interest Inendino may have in making his offensive speech. Where an employer is concerned about potential disruptiveness of speech, a court gives "substantial weight to [the] employers' reasonable predictions of disruption." *Craig*, 736 F.3d at 1119. But "*Pickering* balancing is not like rational basis review"; a court must look to what an employer's actual concerns were. *Harnishfeger*, 943 F.3d at 1116 (internal quotation marks omitted). A stronger "showing may be necessary when an employee's speech more substantially involves matters of public concern." *Craig*, 736 F.3d at 1119 (internal quotation marks omitted).

The CFD's mission is to protect the lives and property of the residents of Chicago, and so that it can carry out this mission, the CFD insists that its employees "promote the confidence of the public and the representative integrity of the department." Def. City of Chicago's L.R. 56.1 Stmt. ¶ 67. Inendino does not dispute that he commented, "should aim for the torso!!!" on a video of a shooting that left two men dead, that he posted a meme of a car running over pedestrians with the caption, "All Lives Splatter," or that he commented "Love it" on a post of an image of a protester who appears to have been shot. *Id.* ¶¶ 42, 45, 46. The CFD reasonably concluded that

these statements were contrary to the CFD's mission of saving lives and was potentially injurious to the CFD's interest of maintaining the public's confidence.

Inendino's race-based comments posed even a greater risk to the CFD's mission. The engine company where Inendino worked served a predominantly African American neighborhood, yet Inendino repeatedly posted content suggesting African-Americans were looters, abused public assistance, and were "animals." *Id.* ¶ 39. Inendino disputes the interpretation of these statements, arguing that they were not racially charged, but the CFD reasonably concluded that "any minority resident of the City, who was exposed to the content on Inendino's public Facebook page, could reasonably question whether he would deliver the appropriate level of care were they to need his services as an EMT." *Id.* ¶ 55.

The City's concerns about the potential for future disruption were not speculative, in significant part due to the accessibility of Inendino's comments speech and the evidence of actual disruption. As one court aptly noted, "posting on a social media platform carries the risk of amplification." *Hedgepeth v. Britton*, No. 21 C 3790, 2024 WL 689959, at *8 (N.D. Ill. Feb. 20, 2024). Inendino's Facebook posts and comments were public and thus were freely accessible to the members of the public he served who were members of minority groups that he degraded. Because Inendino expressly identified himself as an employee of the CFD on his profile and his comments appeared next to his profile picture of him wearing CFD paraphernalia, defendants reasonably concluded disruption to the CFD would ensue if members came across his offensive speech. And two members of the public actually filed complaints with the CFD based on Inendino's Facebook postings, which required the expenditure of time and attention.

11

In other words, there was actual disruption caused by Inendino's postings. It is true that there were no additional complaints after these two, but that is not a material factor in this balancing of interests.

Perhaps defendants would have had to make a greater showing of the potential for future disruption had Inendino's speech touched on matters of public concern in more than a tangential way. But the "less serious, portentous, political, significant the genre of expression, the less imposing the justification that the government must put forth in order to be permitted to suppress the expression." *Craig*, 736 F.3d at 1119 (internal quotation marks omitted). Inendino's interest in expressing his anger toward other members of other demographic groups in a way that is barely, if at all, related to matters of public concern, pales in comparison to the defendants' interest in providing efficient services, maintaining the public trust, and preventing disruption.

Based on the factual record, Inendino cannot show that defendants violated his rights under the First Amendment. Accordingly, the Court need not address the issues of qualified immunity for the individual defendants or the City's liability under *Monell*.

## Conclusion

For the reasons stated above, the Court denies Inendino's motion for summary judgment [dkt. no. 96] and grants defendants' cross-motions for summary judgment [dkt. nos. 124, 126]. The Court directs the Clerk to enter judgment stating: This case is dismissed with prejudice.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 7, 2024